Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Carol Gobus*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Carol Gobus, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Liberty Life Assurance Company of Boston; Liberty Mutual Group, Inc.; Liberty Mutual Group, Inc. Group Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Carol Gobus (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Liberty Mutual Group, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Liberty Life Assurance Company of Boston (hereinafter referred to as "Liberty"). The specific Liberty group long-term disability policy is known as Group Policy No.: GF3-800-000001-01 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Liberty Mutual Group, Inc. Group Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, Liberty functioned as the claim administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Liberty.

6. Liberty operated under a conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7. Liberty's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8. The Company, Liberty and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

10. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

11. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 14, 2013, due to serious medical conditions and was unable to work in her designated occupation as a Customer Care Case Manager. Plaintiff has remained continuously "disabled" by medical conditions that are not subject to any limitation that may be set forth in the Policy as that term is defined in the Policy. Due to Plaintiff's serious medical conditions that are not subject to any limitation that may be set

forth in the Policy, she has been continuously unable to work in any occupation since October 14, 2013.

12. Following the onset of her disability, Plaintiff filed a claim for short-term disability benefits under the Company's self-insured Short Term Disability Group Disability Plan, which was also administered by Liberty. Plaintiff's claim for short-term disability benefits was approved and those benefits have been paid and exhausted with the Company.

13. Plaintiff then filed a claim for long-term disability benefits under the relevant Policy which was administered by Liberty. Liberty made every decision in Plaintiff's long-term disability claim.

14. Upon information and belief, the relevant Liberty Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

"Disability" or "Disabled" means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

   a. if the Covered Person is eligible for the 18 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination period and the next 18 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

   b. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

15. In support of her claim for long-term disability benefits, Plaintiff submitted to Liberty medical, vocational and lay-witness evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

-4-

16. As a part of its review of Plaintiff's claim, Liberty retained a third party vendor to conduct surveillance of Plaintiff on three separate days, which occurred on January 29, 2015, January 30, 2015 and January 31, 2015.

17. During the course of the three days, Plaintiff did not engage in any activity and no actual surveillance of Plaintiff was acquired.

18. Liberty initially approved Plaintiff's long-term disability claim and paid her long-term disability benefits through October 13, 2015, when Liberty terminated her benefits after concluding Plaintiff was disabled and unable to work due to a medical condition that was limited to 18 months of disability benefits in the Policy. Plaintiff alleges in this action that her disability claim and many of her disabling medical conditions are not subject to any Policy limitation. Plaintiff also alleges that Liberty's termination of her claim and her disability benefits is unlawful, unreasonable, erroneous and palpable evidence that its conflict of interest is the reason it applied a Policy limitation so it could try to eliminate its liability to Plaintiff.

19. In a letter dated October 8, 2015, Liberty informed Plaintiff it was terminating her long-term disability benefits beyond October 13, 2015 after concluding her claim and medical conditions were subject to a limitation in the Policy and that it had paid all the benefits to Plaintiff that she was entitled to.

20. As a part of its review of Plaintiff's claim, Liberty again retained a third party vendor to conduct surveillance of Plaintiff on three separate days, which occurred on August 30, 2015, August 31, 2015 and September 1, 2015.

21. Over the three days of surveillance, the investigator observed Plaintiff for a total of approximately *55 seconds*, briefly walking and entering into a vehicle. Plaintiff's minimal activities as observed on the surveillance video do not suggest in any manner

that she is able to work in any occupation on a regular and consistent basis, or that she is not disabled as her and her doctors have alleged.

22. Liberty never alleged in any of its denial letters that Plaintiff's minimal activities as observed on surveillance video suggests that she is not disabled or does not meet the definition of disability in the Policy.

23. As part of its review of Plaintiff's long-term disability claim, Liberty obtained a medical records only "paper review" from a physician named N. Nichole Barry, M.D.

24. Upon information and belief, Plaintiff alleges Dr. Barry may be a long time medical consultant for Liberty and/or the disability insurance industry. As a result, Plaintiff alleges Dr. Barry may have an incentive to protect her own consulting relationships with Liberty and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Liberty and which supported the termination of Plaintiff's benefits.

25. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Liberty's October 8, 2015 termination of her benefits and submitted additional medical, vocational and lay-witness evidence supporting her appeal and her allegation that she continued to meet the definition of disability in the Policy. Plaintiff's evidence also supported her allegation that her claim and disabling medical conditions were not subject to any limitation that may be set forth in the Policy.

26. Plaintiff submitted to Liberty a March 15, 2016 narrative letter authored by her board certified treating physician who opined, "It remains my opinion that [Plaintiff] is currently disabled solely from her physical condition…It remains my opinion that 'I feel that [Plaintiff] is unable to work in even a sedentary occupation.'"

27.     Plaintiff also submitted to Liberty an Independent Medical Examination report dated March 3, 2016 authored by a board certified rheumatologist, wherein after a physical examination of Plaintiff and review of Plaintiff's medical records she opined, "It is my opinion based on my examination of [Plaintiff], a review of her medical records, and a review of Mr. Goldstein's FCE report that due solely to her physical diagnosis and the limitations they create for [Plaintiff], she is unable to work in any occupation at the present time."

28.     Plaintiff also submitted to Liberty a Functional Capacity Evaluation report dated February 25, 2016, wherein after an extensive several hour evaluation, a qualified physical therapist concluded that, "…she is unable to perform the physical demands or material duties of her past work or any other gainful occupation on a regular and consistent basis…"

29.     Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated April 3, 2016, who after interviewing Plaintiff and reviewing the aforementioned evidence along with the definition of disability in the Policy and its limitation of benefits for certain medical conditions, concluded, "…it is unreasonable to assume that [Plaintiff] would be able to perform any of her past work or any work that may exist in the national economy."

30.     Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications with the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

31.     Plaintiff also submitted to Liberty two (2) sworn affidavits authored by herself and her mother, who both confirmed she is unable to work in any occupation due to medical conditions that are not subject to a Policy limitation, and that these medical

1   conditions have not improved in any meaningful way since the date she originally became
2   disabled.

3      32. As part of its review of Plaintiff's claim for long-term disability benefits,
4   Liberty obtained a medical records only "paper review" of Plaintiff's claim from a physician
5   named Philip J. Marion, M.D.  Liberty did not disclose the identity of this reviewing
6   physician to Plaintiff during its review of her claim.  Liberty only disclosed Dr. Marion's
7   name when it issued the final denial in her claim.

8      33. Upon information and belief, Plaintiff alleges Dr. Marion may be a long time
9   medical consultant for Liberty and/or the disability insurance industry.  As a result, Plaintiff
10  alleges Dr. Marion may have an incentive to protect his own consulting relationship with
11  Liberty and/or the disability insurance industry by providing medical records only paper
12  reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim,
13  in order to provide opinions and report(s) which are favorable to insurance companies and
14  that supported the denial of Plaintiff's claim.

15     34. In letters dated April 1, 2016, April 11, 2016 and May 18, 2016, in order to
16  engage Liberty in a dialogue so she could perfect any alleged deficiencies in her claim,
17  Plaintiff requested a complete copy of any and all medical records only "paper reviews"
18  such as Dr. Marion's from Liberty, and the opportunity for her and her treating physicians
19  to respond to the reviews prior to Liberty rendering a determination in her claim.

20     35. Prior to rendering its final denial, Liberty never shared with Plaintiff the
21  medical records only "paper review" authored by Dr. Marion so she could respond to the
22  report and perfect her claim.  Liberty's failure to provide Plaintiff with the opportunity to
23  respond to Dr. Marion's report is an ERISA procedural violation, it precluded a full and fair
24  review pursuant to ERISA and also violated Ninth Circuit case law.

25
26

36. In a letter dated May 27, 2016, notwithstanding Plaintiff's aforementioned evidence which proved that she met any definition of disability in the Policy, and that some or all of her disabling medical conditions are not subject to any limitation that may be set forth in the Policy, Liberty notified her it had denied her claim for continued long-term disability benefits. In its letter, Liberty concluded that "the information does not contain physical exam findings…or other forms of medical documentation supporting her symptoms related to any physical medical condition that were of such severity that they resulted in restrictions or limitations rendering her unable to perform the duties of the occupations identified as being within her functional capacity and vocational skills after [October 13, 2015]."

37. Liberty's May 27, 2016 denial is erroneous because although one or some of Plaintiff's disabling medical conditions may have been subject to a limitation in the Policy, not all of her medical conditions are. As referenced *infra,* Plaintiff's treating medical providers have rendered opinions that she is unable to work in any occupation due to disabling medical conditions that are not subject to any Policy limitation, which directly contradicts Liberty's allegations in its May 27, 2016 final denial.

38. In its denial letter dated May 27, 2016, Liberty notified Plaintiff she had exhausted her administrative levels of review and that she could file a civil action lawsuit in federal court pursuant to ERISA.

39. Upon information and belief, Liberty's May 27, 2016 denial letter confirms that it failed to provide a full and fair review, and in the process committed several ERISA procedural violations. Liberty violated ERISA for numerous reasons including completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of

disability of disability in the Policy, as well as the fact that her claim and disabling medical conditions are not subject to any limitation that may be set forth in the Policy.

40. In evaluating Plaintiff's claim on appeal, Liberty owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other participants" which it failed to do. [1]

41. Liberty failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal in order to prove not only that she is disabled as that term is defined in the Policy, but disabled due to a medical condition or medical conditions which are not subject to any limitation in the Policy. Liberty's failure to investigate the claim, to engage in a dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is a reason she did not receive a full and fair review.

42. Plaintiff alleges Liberty provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by concluding she is "disabled" due to a medical condition or medical conditions that are subject to a Policy limitation; by failing to have Plaintiff's claim reviewed by truly independent medical professionals; by failing to credit Plaintiff's reliable evidence; by failing to obtain an

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

Independent Medical Examination when the policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and denials; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all her medical conditions which are not subject to a Policy limitation and the work limitations proven in her medical evidence as well as the impact the combination of these medical conditions and limitations have on her ability to work in any occupation; by failing to engage Plaintiff in a dialogue so she could respond to the reviewing physician's report by submitting the necessary evidence to perfect her claim so she could prove she is "disabled" as that term is defined in the Policy, and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

43. Plaintiff alleges a reason Liberty provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Liberty undertook as the decision maker and the payor of benefits. Liberty's conflict of interest provided it with a financial incentive to terminate Plaintiff's benefits by finding that she is not disabled due to a medical condition and/or medical conditions that are not subject to a limitation in the Policy.

44. When Liberty denied Plaintiff's claim and by asserting it is limited due to a Policy limitation, it only paid her 18 months of benefits. As a result, when Liberty terminated Plaintiff's claim it also saved a significant sum of money.

45. Plaintiff is entitled to discovery regarding Liberty's aforementioned conflicts of interest. Plaintiff is entitled to discovery regarding the conflicts of interest of any third

party vendor hired by Liberty to retain a reviewing medical professional in Plaintiff's claim and of *any* individual who reviewed her claim. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Liberty's decision to terminate her benefits and deny her claim.

46. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Liberty as referenced herein was an abuse of any discretion that may have been afforded to it in the Policy. Moreover, Liberty's ERISA violations are so flagrant that they justify *de novo* review.

47. As a direct result of Liberty's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled. Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

48. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits as referenced herein, along with prejudgment interest, reasonable attorney's fees and costs from Defendants.

1  49. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of her benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she is disabled and meets any definition of disability in the Plan and/or Policy due to a medical condition and/or medical conditions that are not subject to any limitation that may be set forth in the Plan and/or Policy. As a result of the Court's finding that Plaintiff is disabled due to a medical condition and/or medical conditions that are not subject to any limitation as set forth in the Plan and/or Policy, she seeks an Order that she is entitled to disability income benefits as well as any other non-disability employee benefits she may be entitled as a result of the Court's finding that she is disabled, from the date she was first denied these benefits through the date of judgment with prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 28th day of June, 2016.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
    Scott E. Davis
    Attorney for Plaintiff